No. 25-1516

# UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

AVANRU DEVELOPMENT GROUP, INC.

Plaintiff – Appellant

v.

TOWN OF SWANZEY, NH, Zoning Board of Adjustment and Planning Board; ANN KARASINSKI, Zoning Board of Adjustment member, in both the individual and official capacities; ADAM MULHEARN, Zoning Board of Adjustment member, in both the individual and official capacities; BRYAN RUDGERS, Zoning Board of Adjustment member, in both the individual and official capacities; ROBERT MITCHELL, Zoning Board of Adjustment member, in both the individual and official capacities; RICHARD LANE, Planning Board member, in both the individual and official capacities; JANE JOHNSON, Planning Board member, in both the individual and official capacities; STEVE MALONE, Planning Board member, in both the individual and official capacities; SYLVESTER KARASINSKI, Planning Board member, in both the individual and official capacities; MATTHEW BACHLER, Director of Planning & Economic Development, in the former official capacity,

Defendants – Appellees,

On Appeal from the United States District Court for the District of New Hampshire

## BRIEF FOR DEFENDANTS-APPELLEES

Emily C. Goering (Bar #268497)
Robert J. Dietel (Bar #19540)
Gallagher, Callahan & Gartrell, P.C.
214 N. Main St., Concord, NH 03301
Concord, NH  03301
(603) 545-3656; (603) 545-3613

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ...................................................................i

TABLE OF AUTHORITIES................................................iv

STATEMENT OF ORAL ARGUMENT ..........................................1

JURISDICTIONAL STATEMENT ..................................................2

STATEMENT OF ISSUE.................................................................3

STATEMENT OF THE CASE ..........................................................4

SUMMARY OF THE UNDERLYING FACTS ...............................7

STANDARD OF APPELLATE REVIEW.........................................18

SUMMARY OF THE ARGUMENT .............................................19

ARGUMENT .................................................................................20

    I.     SECTION 1983 CLAIMS ARE NOT COGNIZABLE FOR GARDEN VARIETY DISPUTES ARISING OUT OF LOCAL PLANNING AND ZONING DECISION ......20

II.    AVANRU'S CONCLUSORY ALLEGATIONS ARE SQUARELY CONTRADICTED BY THE EVIDENTIARY RECORD, AND THE RECORD DOES NOT RISE TO THE LEVEL OF CONDUCT NECESSARY TO MAINTAIN A SECTION 1983 CLAIM ....................................................................23

A. THE RECORD DOES NOT SUPPORT AVANRU'S CONTENTION THAT IT WAS SUBJECTED TO YEARS OF DELAY AND PROCEDURAL IRREGULARITY ........................................................23

B. THE MISAPPLICATION OF APPLICABLE ORDINANCES DOES NOT SUPPORT A SECTION 1983 CLAIM ....................................................24

C. THE DESIGN AND REVIEW REQUIREMENTS IMPOSED BY DEFENDANTS DO NOT CONSTITUTE A GROSS ABUSE OF POWER OR MALICIOUS BAD FATH INTENT TO INJURE........26

D. THE CONTEXT OF MEMBERS' DISCUSSIONS DO NOT EVIDENCE AN INTENT TO DISCRIMINATE .......................................................29

E. THE RECORD DOES NOT EVIDENCE THAT DEFENDANTS CONSIDERED AFFORDABLE HOUSING IN THEIR DELIBERATIONS, LET ALONE, INVIDIOUSLY DISCRIMINTAED AGAINST IT ..............................................................31

III.   *SBT HOLDINGS, LLC V. TOWN OF WESTMINSTER* DOES NOT SUPPORT AVANRU'S CLAIMS ............................34

IV.   AVANRU HAS FAILED TO PUT FORTH A VIABLE BASIS TO FOREGO THE FIRST CIRCUIT STANDARD AND GUIDANCE, WHICH REJECTS SECTION 1983 CLAIMS IN

THIS CONTEXT, IN FAVOR OF ADOPTING ANOTHER CIRCUIT'S STANDARD ................................................36

A. THERE IS NO BASIS TO REJECT WELL-ESTABLISHED FIRST CIRCUIT PRECEDENT ...... 36

B. THERE ARE ADEQUATE STATE-LAW REMEDIES TO REDRESS AVANRU'S ALLEGED HARM................ 38

CONCLUSION .........................................................................40

CERTIFICATE OF COMPLIANCE.............................................42

CERTIFICATE OF SERVICE.....................................................42

# **TABLE OF AUTHORITIES**

**CASES**                                                                 **PAGE**

*Cloutier v. Town of Epping*, 714 F.2d 1184 (1st Cir. 1983) ..........26, 29

*Creative Environments v. Estabrook*, 680 F.2d 822
(1st Cir. 1982.) .......................................................20, 21, 22, 26, 28, 38

*Eichenlaub v. Twp. of Indiana*, 385 F.3d 274 (3d Cir. 2004) ............ 21

*Freeman v. Town of Hudson*, 714 F.3d 29 (1st Cir. 2013) .................. 18

*Lister v. Bank of America, N.A.*, 790 F.3d 20 (1st Cir. 2015) ............. 18

*Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32
(1st Cir. 1992) ................................................................................. 22

*PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28 (1stCir. 1991).......... 21

*San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465
(1st Cir. 2012) ................................................................................. 21

*SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28 (1st
Cir. 2008) ...............................................................22, 29, 34, 35, 36

*Soto-Negron v. Taber Partners I*, 339 F.3d 35 (1st Cir. 2003)............ 18

*United States v. Barbosa*, 896 F.3d 60 (1st Cir. 2019)........................ 37

*Vill. Of Belle Terre v. Boraas*, 416 U.S. 1 (1974) .............................. 21

**FEDERAL STATUTES**

SECTION 1983. 19, 20, 21, 22, 23, 24, 25, 26, 28, 29, 31, 34, 36, 38, 40

## STATE LAW STATUTES

RSA 676:4, (I)(c)(1) .......................................................................... 15

RSA 677:4 ..................................................................................... 9, 39

RSA 677:14 ...................................................................................... 39

RSA 677:15 ...................................................................................... 39

RSA 677:20 ...................................................................................... 39

## STATEMENT OF ORAL ARGUMENT

Defendants-Appellees, the Town of Swanzey, New Hampshire, Ann Karasinski, Adam Mulhearn, Bryan Rudgers, Robert Mitchell, Richard Lane, Jane Johnson, Steve Malone, Sylvester Karasinski, and Matthew Bachler (hereinafter, the "Defendants"), respectfully submit that oral argument is unnecessary with respect to this appeal because the dispositive issues have been authoritatively decided; and, because the facts and legal arguments are adequately presented in the briefs and record, therefore, the decision process would not be aided by oral argument.

## JURISDICTIONAL STATEMENT

The Defendants accept the jurisdictional statement contained in the brief of Plaintiff-Appellant, Avanru Development Group, Ltd. (hereinafter "Avanru").

## <u>STATEMENT OF ISSUE</u>

1. Whether the District Court properly granted the Defendants'
   Motion to Dismiss, based on the uncontroverted factual record
   before the Court, including extensive public records appended
   thereto by Avanru, which conclusively refute Avanru's conclusory
   allegations?

## STATEMENT OF THE CASE

Avanru filed a Complaint on April 16, 2024 against the Town of Swanzey, various members of the Swanzey Zoning Board of Adjustment (the "ZBA"), various members of the Swanzey Planning Board (the "Planning Board"), and the Swanzey Director of Planning and Economic Development. (App. 11-62.)[1] Avanru's grievances arise from the local land planning process, during which Avanru sought municipal approvals from the ZBA and Planning Board. Avanru's Complaint was accompanied by more than 1,750 pages of documentary evidence. (App. 63-1815.) The supporting documents provided a complete record of Avanru's procedural history through the local approval process. Specifically, the documents provided a complete record of ZBA and Planning Board meeting minutes; transcripts of Planning Board hearings; reports and memoranda from municipal staff and the Southwest Region Planning Commission; emails with municipal staff; correspondence from abutters, citizens, and Avanru's counsel; applications for municipal approvals; review of Avanru's applications

---

[1] "App." refers to Appellant's Appendix, filed with this Court on August 27, 2025. References to page numbers relate to the Bate's numbering in the lower righthand corner of each page of Appellant's Appendix.

from departmental heads; notices of decisions from the ZBA and Planning Board; orders from the New Hampshire Superior and Supreme Courts; and pleadings filed before the ZBA and Planning Board. (App. 63-1815.)

Avanru brought seven claims against the Defendants: two federal-law claims and five state-law claims. (App. 11-62.) On July 15, 2024, Defendants filed a Motion to Dismiss and Supporting Memorandum of Law, seeking to dismiss Avanru's Complaint in its entirety. (ECF Doc. 24, 24-1.) On September 13, 2024, Avanru filed an Objection and Supporting Memorandum of Law. (ECF Doc. 27, 27-1.) Defendants filed a Reply and Avanru filed a Surreply. (ECF Doc. 30, 31.)

On April 10, 2025, the District Court granted Defendants' Motion to Dismiss. (Add. 38-69.)[2] The District Court issued a comprehensive thirty-two page order that set forth its rationale. (Add. 38-69.) The District Court provided a thorough recitation of the underlying factual record, taken from the voluminous exhibits that Avanru supplied with its Complaint. (Add.38-56.) In its discussion, the District Court

---

[2] "Add." refers to Appellant's Addendum, filed with this Court on August 27, 2025. References to page numbers relate to the Bate's numbering in the lower righthand corner of each page of Appellant's Addendum.

emphasized the fact that "many of these exhibits contradict the conclusory allegations in Avanru's complaint regarding what transpired at various public meetings, defendants' treatment of Avanru and its projects, and defendants' motivations for their actions. To the extent the complaint makes general and conclusory allegations that are contradicted by specific facts contained in the transcripts and meeting minutes, the court is entitled to credit the specific facts evidenced in the exhibits." (Add. 57-59.) Based on the evidence before it, the District Court concluded that Avanru had failed to credibly allege the type of fundamental procedural irregularity, racial animus, or invidious discrimination required to establish an equal protection or substantive due process claim. (Add. 59-68.) In the absence of any viable federal-law claim, the District Court declined to exercise jurisdiction over the remaining state-law claims, and dismissed Avanru's Complaint in its entirety. (Add. 68-69.)

On appeal, Avanru focuses on the dismissal of its federal equal protection and substantive due process claim. (*See generally* Appellant's Brief.) Avanru does not address its state-law claims, or the District Court's determination that declined to exercise jurisdiction over such state-law claims.

# SUMMARY OF THE UNDERLYING FACTS

Avanru is a developer that sought to construct two housing developments in Swanzey, New Hampshire. (App. 15 at ¶¶ 19, 20; 50 at ¶ 179.) The first, termed the "Airport Project," is a 76-unit, multi-family residential building consisting of age-restricted and affordable housing. (App. 15 at ¶ 20.) The second, termed the "West Swanzey Project," is an 84-unit, multi-family residential dwelling, consisting of workforce housing. (App. 50 at ¶179.) Prior to filing the underlying lawsuit, Avanru had already received the necessary approvals from the ZBA and Planning Board to construct both the Airport Project and West Swanzey Project. (App. 507, 1025-27, 1784-86, 1810-11.)

## I. Factual and procedural background of the Airport Project.

## (A) ZBA process for the Airport Project.

On February 28, 2020, Avanru filed an application with the ZBA, seeking a special exception to construct the Airport Project. (App. 16 at ¶ 25.) Avanru's application was heard at the next regularly scheduled meeting of the ZBA, held on April 20, 2020. (App. 64-75.) The April 20, 2020 ZBA meeting was the first meeting of the ZBA at which the public could participate via Zoom, in response to the unfolding COVID-19

pandemic. (App. 64-75.) The meeting minutes memorialize that the ZBA discussed potential for regional impact, building footprint, number of parking spaces, availability of utilities, driveway permits, and drainage easements. (App. 64-75.) The public hearing portion of the meeting was opened at 8:45 PM with 64 participants, each of which has the right to testify. (App. 64-75.) At 10:30 PM, there were still participants wishing to testify, and the ZBA had not yet read written comments or addressed questions submitted through the Q&A box. (App. 64-75.) As a result, the ZBA moved to continue the meeting to address the outstanding questions and testimony, and further granted Avanru's request to hold a special meeting in order to "to wrap this up before May." (App. 64-75.)

The ZBA held a special meeting on May 4, 2020 to resume the public hearing on Avanru's application. (App. 161-71.) The public hearing was reopened, allowing the remaining citizens to testify, then public comment was closed to allow the ZBA members to discuss the application. (App. 161-71.) The meeting minutes memorialize that the ZBA discussed sidewalks, exterior building finishes, fire department access, and traffic impacts. (App. 161-71.) The Zoning Ordinance sets forth four criteria questions that must be satisfied to grant a special exception, and the ZBA members were required to make findings and

8

vote on each of those four criteria. (App. 169-71.) In response to the question "*is the proposed use similar to one or more of the uses already authorized in that District and is it an appropriate location for such use*" a majority of the members voted no, on an understanding that the Airport Project was dissimilar to other projects that had previously received a special exception, and that the density, setbacks, and utilization of the land made it an inappropriate location. (App. 170.) In response to the question "*will such approval reduce the value of any property within the district, or otherwise be injurious, obnoxious, or offensive to the neighborhood*" a majority of the members voted yes, finding that the Airport Project was offensive given the location, community where it would reside, and types of surrounding homes. (App. 170.) At the conclusion of their discussion, the ZBA voted 4-1 to deny Avanru's application for a special exception. (App. 170-71.)

**(B) Superior Court appeal of the ZBA decision on the Airport Project.**

Avanru subsequently filed a timely appeal of the ZBA denial with the Cheshire County Superior Court pursuant to RSA 677:4. (App. 24 at § 61.) On December 14, 2020, the Superior Court (*Ruoff*, J.) issued an order vacating the ZBA denial on the following grounds: (1) the ZBA

erred by comparing the Airport Project to other projects that had received a special exception, rather than comparing it to permitted uses in the Zoning District; (2) the ZBA erred by weighing public comments about unpopularity and aesthetics – such as height, lack of landscaping, and preserving rural character – rather than focusing on the use itself, when finding the project would be offensive. (App. 483-91.) The Superior Court made no finding of bad faith, malice, or gross negligence in regard to the ZBA's actions. (App. 483-91.)

**(C) Supreme Court appeal of the ZBA decision on the Airport Project.**

On January 8, 2021, the Town appealed the Superior Court decision to the New Hampshire Supreme Court. (App. 25 at ¶ 67.) Avanru similarly brought a cross-appeal to the New Hampshire Supreme Court regarding the Superior Court's denial of its request for a builder's remedy. (App. 493-98.) On August 16, 2022, the Supreme Court issued an order affirming the Superior Court's decision to vacate the ZBA denial. (App. 493-98.) However, the Supreme Court was equally divided on the issue of how to interpret the Zoning Ordinance's first criteria of a special exception application, which required some comparison of the Airport Project to other projects. (App. 496-98.) Two justices found that

they would have reversed the Superior Court, because the Zoning Ordinance allowed the ZBA to compare the Airport Project to permitted uses in the District, in addition to uses previously authorized by special exception, meaning the ZBA had voted appropriately. (App. 496-98.) The remaining two justices found that they would affirm the Superior Court because the Zoning Ordinance only allowed the ZBA to compare the Airport Project to permitted uses, not uses that were authorized through special exception, as the ZBA had done. (App. 496-98.) Because the four-member bench was equally divided on the issue of whether the ZBA correctly interpreted the language regarding special exceptions, the Superior Court's order was affirmed. (App. 498.) The Supreme Court made no discussion or decision that the ZBA acted in bad faith, with malice, or with gross negligence in reaching its decision. (App. 493-98.)

**(D)  ZBA process for the Airport Project following remand.**

On September 19, 2022, the ZBA held a public meeting to discuss the directives from the Superior Court and Supreme Court decisions. (App. 500-05.) After discussion of how to apply the special exception criteria based on the guidance from the Supreme Court, the ZBA voted unanimously to approve Avanru's application. (App. 503.) The ZBA

memorialized its approval in a written decision dated September 23, 2022. (App. 507.) Avanru subsequently filed a Motion for Rehearing with the ZBA, seeking to clarify a potential ambiguity between the meeting minutes and written decision. (App. 512-15.) On October 17, 2022, the ZBA unanimously voted that the terms of the written decision were accurate and controlling. (App. 521-22.) The ZBA had no further involvement with the Airport Project after this date.

**(E)   Planning Board process for the Airport Project.**

On November 10, 2022, the Planning Board accepted Avanru's application for site plan review and the public hearing was initiated. (App. 528-38.) Following Avanru's presentation of the Airport Project, the Planning Board raised questions about the income restrictions Avanru had presented, waste disposal, Americans with Disabilities Act compliance, number of bedrooms, propane storage, visitor parking, septic design, and Federal Aviation Administration compliance given the Airport Project's proximity to Keane Dillant-Hopkins Airport. (App. 528-38.) Members of the public voiced their concerns about landscaping, traffic impacts, impervious surfaces, parking adequacy, the height of the building being incongruous with neighboring two-story buildings and blocking sunlight from surrounding homes, and the design of a flat-

roof being incongruous with the pitched roofs on surrounding homes. (App. 528-38.) In response to these concerns, the Planning Board requested that Avanru consider modifying the design for aesthetic value, including making the building shorter and utilizing a pitched roof. (App. 536.) The Planning Board continued the public hearing to the next regularly scheduled meeting. (App. 536.)

On December 8, 2022, the Planning Board resumed public hearing on the Airport Project. (App. 634-44.) Avanru presented revised plans that addressed some concerns raised by the Planning Board and abutters but did not address the height or flat-roof design. (App. 634-44.) Citizens were again given the opportunity for public comment, which raised many of the same concerns previously raised about aesthetics and harmony with the surrounding neighborhood. (App. 634-44.) Members of the Planning Board expressed concern that the flat-roof was not compatible with the surrounding neighborhood, that the building would be directly across the street from homes with pitched roofs, and other examples of buildings with flat-roofs were not located as closely to homes as the Airport Project would be. (App. 642-43.) The Planning Board then voted to continue the application to the next meeting. (App. 643.)

On December 15, 2022, the Planning Board reconvened, and Avanru presented revisions to the plans. (App. 810-19.) The changes included increased landscaping; improving the travel layout around the building for emergency responders; adding an outdoor recreation area; and amending the exterior design. (App. 811.) Specifically, Avanru put forth a proposal that reduced the front of the building to three-stories with a faux pitched roof, maintained four-stories in the middle section of the building, and the rear of the building was reduced to two-stories with a pitched roof to accommodate the glide slope required by the Federal Aviation Administration due to proximity to the airport. (App. 811.) The Planning Board commended Avanru for amending the design to address community and Planning Board concerns. (App. 810-19.) Citizens again voiced their concerns that the aesthetics of the Airport Project would not be harmonious with the surrounding neighborhood and could be injurious. (App. 810-19.) Two Planning Board members discussed that they would like an independent evaluation of the Airport Project on surrounding property values before rendering a decision. (App. 818.) There was disagreement amongst the members as to whether they could require an evaluation, and the meeting was

14

continued to seek advice from counsel regarding whether an independent analysis was permissible. (App. 818.)

On January 12, 2022, the Planning Board reconvened, and discussed that counsel had advised against an independent analysis and reopening the public hearing. (App. 601-611.) Members went on to discuss concerns about the size of the building in relationship to the lot, harmony with the surrounding neighborhood, and potential impacts to property value. (App. 602-03.) The Planning Board ultimately voted 4-3 to deny Avanru's application for site plan review. (App. 604.) Much of the basis for denial was based on members' desire to have more time to consider impacts to the surrounding neighborhood and review plans that had not yet been seen, but Avanru did not consent to an extension of time. (App. 603-04.)[3] The Planning Board's decision was

---

[3] Pursuant to RSA 676:4, (I)(c)(1), the Planning Board has 65 days from the date an application is deemed complete to render a decision on the application, unless extended by voluntary waiver from the applicant. If the applicant does not voluntarily waive the 65-day deadline, it is customary for a planning board to deny the application to comply with the statute by rendering a decision within 65 days. Avanru's application was deemed complete on November 10, 2022, requiring the Planning Board to render a decision by January 14, 2023. When Avanru declined to extend the deadline, the Planning Board was required to render a decision at the January 12, 2023 meeting, despite some members' desire to hear further information on the project.

memorialized in a written decision, citing the reasons for denial as "over intensification of land use; inappropriateness of the location considering the recent plane crash; and the proposal does not fit the character of the neighborhood." (App. 1023.)

Immediately following the Planning Board's decision, counsel for Avanru sent a letter to the Town's counsel instructing them to immediately preserve all evidence and signaling an intent to commence a second lawsuit. (App. 37.) On February 2, 2023, the Planning Board held a special meeting, at which it voted to reconsider Avanru's application, and voted 5-1 to approve Avanru's site plan with conditions. (App. 1025-1027.) The Planning Board had no further involvement with the Airport Project after this date.

## II. Factual and procedural background of the West Swanzey Project.

### (A) ZBA process for the West Swanzey Project.

On March 15, 2021, the ZBA considered Avanru's application for a special exception to construct multi-family housing. (App. 1784.) The ZBA granted the application and memorialized its approval in a written decision on March 17, 2021. (App. 1784.) The ZBA had no further involvement with the West Swanzey Project after this date.

**(B) Planning Board process for the West Swanzey Project.**

Avanru subsequently sought site plan review from the Planning Board. On May 13, 2021, the Planning Board accepted Avanru's application as complete, and began the public hearing process. (App. 1788-98.) The Planning Board requested that Avanru consider revisions to its plan and continued the hearing to May 27, 2021. (App. 1788-95.) The Planning Board provided Avanru with a list of items they were requesting Avanru to work on before the next meeting: alternative designs for the pitch of the roofs; safety issues for pedestrians crossing State Route 10; and fire protection plan for construction phase. (App. 1795.) On May 27, 2021, the Planning Board resumed its deliberations. (App. 1800-08.) Avanru presented both a low-pitch roof design, and gabled-roof design which the Planning Board preferred. (App. 1800-08.) The requirement of a gabled-roof was incorporated into the conditions of approval. (App. 1805.) Jack Franks, the representative for Avanru, was asked if "he is okay with the conditions" to which Mr. Franks replied "they are fair and [I] will abide by them." (App. 1807.) The Planning Board then voted 6-1 to approve Avanru's application for site plan review and memorialized its decision in a written notice. (App. 1807;

17

1810-11.) The Planning Board had no further involvement with the West Swanzey Project after this date.

## STANDARD OF APPELLATE REVIEW

"Dismissal for failure to state a claim is appropriate if the complaint does not set forth the factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Lister v. Bank of America, N.A.*, 790 F.3d 20, 23 (2015). The Court of Appeals reviews the District Court's Rule 12(b)(6) dismissal *de novo*, construing all factual allegations in the complaint in the light most favorable to the non-moving party. *Id*. In doing so, however, the Court of Appeals may disregard facts which have been "conclusively contradicted by plaintiff's concessions or otherwise." *Id*. (quoting *Soto-Negron v. Taber Partners I*, 339 F.3d 35, 38 (1st Cir. 2003). "As especially relevant here, [the Court of Appeals] will consider documents incorporated into reference in the complaint and matters of public record." *Id*. In addition to facts alleged in the complaint, the Court may also consider facts contained in exhibits to the complaint. *See Freeman v. Town of Hudson*, 714 F.3d 29, 35 (1st Cir. 2013).

## SUMMARY OF THE ARGUMENT

Neither Avanru's Complaint, nor the voluminous exhibits submitted therewith, support a cognizable Section 1983 claim. It was therefore proper for the District Court to dismiss the Complaint in its entirety.

Section 1983 claims are generally not cognizable in the context of disputes arising out of local planning and zoning decisions. Section 1983 relief is only available for local planning and zoning matters in the most extreme circumstances – where there is fundamental procedural irregularity, gross abuse of power, invidious discrimination, or a malicious bad faith intent to injure. No such extreme circumstances exist on the well-documented facts of this case.

The meeting minutes, notices of decisions, and transcripts from public hearings memorialize nothing more than a routine land planning process. Avanru presents numerous quotes, conclusory allegations, and negative inferences to try and overcome the general rule against Section 1983 claims for planning and zoning disputes. But, as detailed thoroughly below, Avanru's conclusions are factually incorrect and conclusively refuted by the evidentiary record appended to the Complaint. The District Court was correct to consider such evidence.

19

Avanru attempts to overcome this high hurdle by arguing that its circumstances are factually analogous to the few cases where a Section 1983 claim was cognizable in the planning or zoning context. But such cases are distinguishable from the facts herein and offer no support to Avanru's position. Given the stringent standard applicable to the First Circuit, Avanru argues that the binding precedent of this Circuit should be rejected, in favor of a more lenient standard from other jurisdictions. There is no basis to reject the well-settled law of the First Circuit.

For the reasons detailed herein, this Court should affirm the District Court's judgement.

**ARGUMENT**

**(I)**     **Section 1983 claims are not cognizable for garden variety disputes arising out of local planning and zoning decisions.**

It is well settled in the First Circuit that ordinary "run of the mill disputes between a developer and a town planning agency" are not cognizable under 42 U.S.C. § 1983. *Creative Environments v. Estabrook*, 680 F.2d 822, 833 (1st Cir. 1982.) This precedent exists because, otherwise, "virtually every alleged legal or procedural error of a local planning authority or zoning board of appeal could be brought to federal court." *Id*. at 831. It is, of course, not the Federal Court's role to sit as a

20

zoning board of appeals, and the rule against recognizing Section 1983 claims for garden variety land permitting disputes "is designed to avoid converting federal courts into super zoning tribunals." *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004); *see also Vill. Of Belle Terre v. Boraas*, 416 U.S. 1, 14 (1974) (*Marshall*, J. dissenting).

In the ordinary course, plaintiffs have "adequate state law remedies to vindicate these claims without resort to a federal court." *Creative Env'ts*, 680 F.2d at 833. The only way to overcome the general rule against Section 1983 claims in the context of local planning and zoning disputes is to allege that the defendants' actions were "tainted with fundamental procedural irregularity, racial animus, or the like." *Id.*; *see also PFZ Properties, Inc. v. Rodriguez*, 928 F.2d 28, 32 (1st Cir. 1991), overruled on other grounds by *San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465 (1st Cir. 2012) (requiring that a plaintiff must allege gross abuse of power, invidious discrimination based on race or sex, or an egregious procedural irregularity to state a Section 1983 claim in the context of local planning or zoning disputes).

The rule against Section 1983 claims arising out of the local planning and zoning context is so strong, that even an allegation that local planning officials have distorted or clearly violated governing law

is not sufficient to maintain a claim against this strict standard. *Creative Env'ts*, 680 F.2d at 833. Nor is it enough to allege that planning officials "engaged in adversarial and even arbitrary tactics" in opposition to a plaintiff's interest. *Id.* at 829.

The rule against Section 1983 claims in the planning and zoning context has been adopted to combat the concern that "if disgruntled permit applicants could create constitutional claims merely by alleging that they were treated differently from a similarly situated applicant, the correctness of virtually any state permit denial would become subject to litigation in federal court. Limiting such claims is essential to prevent federal courts from turning into zoning boards of appeals." *Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 44-45 (1st Cir. 1992). The First Circuit has adopted an additional requirement for such class-of-one claims, requiring a plaintiff to allege that disparate treatment was motivated by a "malicious bad faith intent to injure." *SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 35 (1st Cir. 2008).

**(II)** **<u>Avanru's conclusory allegations are squarely contradicted by the evidentiary record, and the record does not rise to the level of conduct necessary to maintain a Section 1983 claim.</u>**

Avanru presents a wide array of conclusory allegations to support its argument that a Section 1983 claim is warranted on the underlying facts. But the evidentiary record submitted with Avanru's Complaint contradicts those baseless assertions. When the evidentiary record is thoroughly examined, it demonstrates nothing more than a routine land planning dispute between a developer and a municipality, which, per the precedents discussed above, is insufficient to give rise to a Section 1983 claim.

**(A)** **The record does not support Avanru's contention that it was subjected to years of delay and procedural irregularity.**

In both its Complaint and on appeal, Avanru argues that it was subjected to procedural irregularity, as evidenced by the fact that it was "forced to endure over three years of delay." (Br. 5; App. 15 at ¶ 68.)[4] This allegation is not only conclusory, it is squarely contradicted by the evidence. From the point of submitting its application to the ZBA

---

[4] "Br." refers to Appellant's Brief, filed with this Court on August 27, 2025. References to page numbers relate to the numbering in the upper righthand corner of each page of Appellant's Brief.

on February 28, 2020, to receiving final approval from the Planning Board on February 2, 2023, the entire permitting process took 35 months. (App. 16 at ¶ 25; 1025-1027.) Of that total timeframe, 27 months (May 21, 2020-August 16, 2022) were accounted for by the state court appellate process, for which the Defendants had no control over timing. (App. 483-91; 493-98.) Avanru itself brought the Superior Court appeal, and brought its own cross-appeal at the Supreme Court. (App. 483-91; 493-98.) To that extent, Avanru was a contributing factor in the timeline associated with obtaining approvals. The Town brought a single, timely appeal to the Supreme Court, as a matter of right, on which the panel of justices was equally divided about how to interpret the Zoning Ordinance. (App. 493-98.) A single, lawful appeal, is not a procedural irregularity. And the fact that the justices were divided underscores the point that there was a true ambiguity in how to interpret the Zoning Ordinance, and the Town's appeal presented a genuine issue that required judicial resolution.

**(B)** **The misapplication of applicable ordinances does not support a Section 1983 claim.**

Throughout its Complaint and on appeal, Avanru takes umbrage with the ZBA and Planning Boards for considering factors that it

24

alleges were not supported by the Zoning Ordinance or Site Plan Review Regulations. (App. 33-34 at ¶¶ 105-09, 53 at ¶ 201; Br. 9-10, 13.) As examples, Avanru cites the Boards' consideration that the project was considered unpopular to the public; that the ZBA incorrectly compared the Airport Project to other projects that received special exceptions rather than comparing to other permitted uses; and denying the Airport Project's approvals despite it satisfying height and density requirements. (Br. 4-5, 9, 11.) In sum, Avanru draws an inference that, because the ZBA and Planning Board did not strictly adhere to the requirements of the Zoning Ordinance and Site Plan Review Regulations, it must have been intentional conduct and arises to the magnitude of a constitutional violation.

Even if Avanru's allegations are taken as true – that the Boards impermissibly applied criteria that was not supported by their regulations – that is not sufficient to establish a Section 1983 claim.[5]

---

[5] It bears mentioning that the ZBA and Planning Boards are comprised of lay-people who volunteer their time for such positions. Rarely do these volunteers have backgrounds in land use and planning or legal interpretation. The meeting minutes and transcripts evidence that the ZBA and Planning Board were confronted with a large-scale project and significant public comment about a wide range of concerns, to which the Boards made a good faith effort to balance well-founded concerns with their interpretation of the regulations.

Even when a defendant clearly violates or distorts applicable law, or blatantly applies an ordinance which it knows is void, it does not amount to a constitutional violation redressable under Section 1983. *Creative Envt's*, 680 F.2d at 833; *Cloutier v. Town of Epping*, 714 F.2d 1184, 1189 (1st Cir. 1983). A review of the meeting minutes and transcripts demonstrates, at best, an inadvertent misapplication of the applicable regulations. But, even if Defendants had intended to circumvent the applicable regulations – which the evidence does not support – even that would not be enough to sustain Avanru's Section 1983 claim.

**(C) The design and review requirements imposed by Defendants do not constitute a gross abuse of power or a malicious bad faith intent to injure.**

Avanru has consistently argued that it was subjected to design and review requirements that no other developer was subjected to. (Br. 4.) Avanru then draws an unsupported inference that such review misapplied local regulations, and further, that the review requirements were imposed to intentionally reduce the project size, make the process for local approval more cumbersome, and create additional design costs. (Br. 4.) In particular, Avanru discusses the requirement for a pitched roof opposed to a flat roof (App. 27 at ¶ 78; Br. 11); the method of

calculating landscaped areas (App. 31 at ¶ 96; Br. 21.); and the Planning Board requesting an appraisal on the Airport Project (App. 32 at ¶ 98; Br. 12.), as evidence that the Defendants were making a concerted effort to hinder the project from moving forward.

As an initial matter, a careful review of the meeting minutes for each of the ZBA and Planning Board meetings demonstrates that the review and design requirements imposed by the Boards were closely tied to traditional land use concerns raised at those meetings. Using Avanru's own examples: the concern about a pitched roof was raised by members of the public at the November 10, 2022 Planning Board meeting, because the Airport Project is in close proximity to homes that all feature pitched roofs, and greatly exceeds the height of the surrounding two-story homes (App. 528-38); the concern about landscaping was discussed heavily at the December 8, 2022 Planning Board meeting, where members of the public testified that a lack of open and green spaces would make the project inharmonious with the surrounding neighborhood (App. 634-44); the concern about an appraisal was in direct response to public concern, beginning at the November 10, 2022 Planning Board meeting, that a project of this size and with poor exterior aesthetics would negatively impact the

27

surrounding property values (App. 582-38). Throughout the ZBA and Planning Board meetings, there were a number of topics that were frequently raised by the public: the Airport Project being much taller and aesthetically inconsistent with the surrounding neighborhood; the Airport Project being too dense for a small lot; the Airport Project increasing vehicular and pedestrian traffic and crating impacts to roadways and sidewalks; and the Airport Project having too little greenspace and too much impervious area. The meeting minutes and transcripts do not reflect an arbitrary intent to derail or injure Avanru's projects. Rather, the meeting minutes and transcripts evidence a diligent and good faith effort on behalf of the ZBA and Planning Board to address the voluminous land use concerns that were placed before them.

But, even applying the motion to dismiss standard, and drawing every inference in Avanru's favor that these review and design requirements were intended to delay Avanru's project, the allegations are *still* insufficient to establish a Section 1983 claim. Even arbitrary, adversarial, and malicious delaying tactics are not enough give rise to a Section 1983 claim in the local planning and zoning context. *Creative Env'ts*, 680 F.2d at 829 (even assuming that the defendants created new

and onerous requirements with the specific intent of delaying and frustrating plaintiff's application process, it was not enough to rise to the level of a violation of the Constitution of the United States); *Cloutier*, 714 F.2d at 1189 (even allegations of perjury and providing false evidence in an effort to delay a plaintiff's construction project was insufficient to establish a Section 1983 claim).

### (D) The context of members' discussions do not evidence an intent to discriminate.

In both its Complaint and on appeal, Avanru presents quoted material that, as Avanru alleges, demonstrate the Defendants intended to treat Avanru differently than other similarly situated developers. (App. 35 at ¶ 113; Br. 4, 13, 18) In both its Complaint and its Brief, Avanru alleges that Planning Board member Jane Johnson stated: "a couple of times you have said 'we are being treated differently.' I think you have been treated differently." (App. 35 at ¶ 113; Br. 16.) Avanru attempts to use this quote, taken out of context, to establish a class-of-one claim by arguing that the quote evidences a "malicious bad faith intent to injure." *SBT Holdings,* 547 F.3d at 35.

When this quote is considered in its entirety, it is clear that Member Johnson's comments are in regard to design elements of the

Airport Project, not a bad faith intent to injure. In its entirety, the quote reads as follows:

> "A couple of times you have said 'we are being treated differently.' I think that you have been treated differently. It's taken a long time, but this is quite a different project. And the size of this project, on the size of the lot that it's situated on, and in the area that it is situated, it's so different from anything else around there, and I think that's why it seems that you've been treated differently."
> (App. 882, p. 129:9-18.)

When this quote is placed in the even larger context, it is clear that it arose during discussions about softening design architecture, lowering the height of the building, and exterior color schemes. (*See generally* App. 851-94.)  Member Johnson was plainly addressing that, to the extent Avanru felt it was being treated differently, it was because the size of the project was unlike the surrounding neighborhood and inconsistent with its lot size.

In its Brief, Avanru criticizes the District Court for crediting the plain language and context of Member Johnson's quote, and argues that the District Court impermissibly determined there was no improper animus. (Br. 16.) In sum, Avanru suggests that the District Court could not credit the benign design discussion in the transcripts, and instead, must assume that there was some latent improper animus. Avanru

offers no support that the District Court must reject documentary evidence and the plain testimony in the transcripts, and instead assume some nefarious intent. Nowhere in the meeting minutes, emails, memoranda, or transcripts is there evidence of a malicious bad faith intent to injure Avanru. To the contrary, the record is replete with discussions pertaining to typical land use considerations such as size, density, exterior finishes, parking, traffic safety, and green space.

**(E)  The record does not evidence that Defendants considered affordable housing in their deliberations, let alone, invidiously discriminated against it.**

At the root of Avanru's argument is an allegation that the Defendants harbored animosity and bias toward the Airport Project and the West Swanzey Project because they featured affordable housing. (App. 25 at ¶ 67, 27 at ¶ 77, 49 at ¶ 176, 55 at ¶ 212, 56 at ¶ 222; Br. 4, 10, 11, 21.) Avanru makes this conclusory allegation in an attempt to establish invidious discrimination based on a protected class, in order to overcome the rule against Section 1983 claims arising out of local zoning and planning disputes.

Avanru offers no decisional law to support its argument that consideration of affordable housing is analogous to the invidious racial or sex-based discrimination that *could* establish a Section 1983 claim.

31

But even assuming, *arguendo,* that consideration of affordable housing is a cognizable class of invidious discrimination, the record is devoid of any evidence that it was a consideration for the ZBA or Planning Board. To the contrary, the limited circumstances in which affordable housing was discussed by any Board was in the context of using Avanru's own description of the projects. By way of example, Avanru introduced its project to the ZBA on April 20, 2020, describing it as "this development is not Section 8 but is age-restricted senior housing for 62 years of age and over. The tenants must have stable incomes. Persons making between $25,000 to $45,000 per year will likely qualify for these units." (App. 68.) When the ZBA voted to accept Avanru's application for the Airport Project on September 19, 2022, they carried this precise language forward. (App. 501, 503.) The ZBA mentioning the affordability of the Airport Project was a means of describing the project, using Avanru's own description, not a standalone comment or consideration of the fact that it is affordable housing.

A review of the meeting minutes and transcripts confirms that there are limited instances in which any member of the ZBA or Planning Board comment on the project involving Section 8, low-income, or affordable housing – those limited instances being when

Avanru has raised the topic of affordability. There are no instances in which the ZBA or Planning Board deliberate or render any substantive discussion regarding the projects being used as Section 8, low-income, or affordable housing. In sum, there is no evidence in the record upon which an inference can be drawn that the ZBA or Planning Board gave any consideration to the fact that the projects would be used for affordable housing. To the contrary, the ZBA and Planning Board discussions were singularly focused on design elements of each project.

Avanru's conclusory allegation that it was discriminated against on the basis of offering affordable housing is severely weakened by its own West Swanzey Project. The West Swanzey Project also featured affordable housing, yet it obtained ZBA approval in only one meeting, and obtained Planning Board approval in two meetings. (App. 1788-95; 1800-08.) The process of obtaining approvals for the West Swanzey Project occurred in Spring 2021, contemporaneous to Avanru seeking approvals for the Airport Project. It is illogical and unsupported to conclude that the same Defendants had such animus toward affordable housing and Avanru that they would deliberately sabotage the approval process for one project, while quickly approving another affordable housing project with the same developer at the same time.

**(III)** *SBT Holdings, LLC v. Town of Westminster* <u>does **not**</u>
<u>support Avanru's claims.</u>

Avanru devotes pages of its Brief to an argument that the case of

*SBT Holdings, LLC v. Town of Westminster* is analogous to the facts

herein, and therefore, like the developer in *SBT Holdings*, Avanru has

alleged a cognizable Section 1983 claim. (Br. 7-14.) However, the facts of

*SBT Holdings* are in stark contrast to this case, and do not support the

argument that Avanru has suffered a claim of constitutional magnitude.

In *SBT Holdings*, a local Conservation Commission issued

repeated enforcement orders to a developer regarding environmental

impacts, despite the Commission having express knowledge that the

state Department of Environmental Protection ("DEP") had exclusive

jurisdiction over the alleged violations and was actively exercising such

jurisdiction. 547 F.3d at 30-31. One such enforcement order was never

served on the developer, but was made public in the newspaper, causing

the developer's lender to cease funding to the project. *Id*. at 31. The

local Commission required the developer to undertake environmental

remediation, which the Commission knew would cause the developer to

violate the terms of a consent order the developer had reached with the

DEP. *Id*. at 31. The local Commission further required the developer to

submit repeated Notices of Intent, with less than a day of notice. *Id*. at

31. The local Commission brought a lawsuit against the developer, and

when the developer moved to dismiss the suit, the Town retaliated by

withholding a certificate of use and occupancy that was a prerequisite

for the sale of condominium units. *Id*. at 32. Despite the environmental

impacts being ongoing, the Commission only brought action against the

developer, but declined to take any action against the subsequent

property owner. *Id*. at 33. The Chair of the Commission was so brazen

as to email "[w]e've heard that [developer] is financially insolvent and

no longer connected to the property, which is why we started this

process in the first place!" *Id*. at 32.

Against that set of facts, the court properly determined that "the

complaint more than adequately alleges that defendants' actions were

motivated by malicious or bad faith intent to injure." *Id*. at 35. But

those facts are highly distinguishable from this case. The defendants in

*SBT Holdings* knew they had no jurisdiction over the developer; created

fundamental procedural irregularities by issuing enforcement orders

without notice and requiring applications to be submitted with less

than 24-hours notice; openly retaliated against the developer to directly

interfere with contracts for sale; only targeted the developer, even when

the same environmental impacts changed ownership; and unequivocally stated that the intent was to cause financial injury and remove the developer from the project. In sum, the *SBT Holdings* defendants had a clear intent to injure the developer.

The record here reflects that the Defendants had proper jurisdiction to review design elements of Avanru's projects; followed the typical procedure of properly noticed public meetings; commended Avanru for the work it was doing to address their concerns; made a diligent and good faith effort to properly interpret and apply regulations; and, following an appeal, respected the guidance of the Supreme Court and voted to approve the Airport Project. A parallel cannot be drawn between the egregious and targeted conduct in *SBT Holdings*, and the good faith attempts made by the Defendants to administer local planning and zoning regulations.

   **(IV)** **<u>Avanru has failed to put forth a viable basis to forego the First Circuit standard and guidance, which rejects Section 1983 claims in this context, in favor of adopting another circuit's standard.</u>**

**(A)** **There is no basis to reject well-established First Circuit precedent.**

The First Circuit has well-defined, and consistently applied standards addressing the nonviability of Section 1983 claims arising out

of local planning and zoning disputes. This well-defined First Circuit precedent forecloses Avanru's attempts to establish a cognizable constitutional violation. To overcome this foreclosure, Avanru now argues that the First Circuit's standard is too stringent, and the standards set forth in other circuits should be applied. (Br. 26-31.)

Under the "law of the circuit" doctrine, "in a multi-panel circuit, newly constituted panels are, for the most part, bound by prior decisions closely on point." *United States v. Barbosa*, 896 F.3d 60, 74 (1st Cir. 2019). "The law of the circuit doctrine is one of the sturdiest building blocks on which the federal judicial system rests." *Id.* (internal quotations and citation omitted). "Exceptions to the law of the circuit doctrine are narrowly circumscribed and their incidence is hen's-teeth-rare." *Id.* "One such exception applies when the holding of a previous panel is contradicted by subsequent controlling authority, such as a decision by the Supreme Court, an en banc decision of the originating court, or a statutory overruling." *Id.* "A second exception may come into play when authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." *Id.*

Avanru makes no effort to argue that one of these narrow exceptions to the law of the circuit doctrine has been satisfied. Avanru provides no basis to conclude that there has been subsequent controlling authority, nor a sound reason to believe that a former panel would change its collective mind. Rather, Avanru simply desires the application of another circuit's standard because it asserts it is "fundamentally unfair" and "significantly harder" for a plaintiff to pursue its claim in the First Circuit. (Br. 26, 31.) Neither of these arguments satisfy the narrowly circumscribed exceptions that would warrant overruling prior First Circuit precedent. As such, *Creative Environments* and its progeny remain the controlling law in the First Circuit, and under such cases, Avanru does not have a cognizable Section 1983 claim.

**(B) There are adequate state-law remedies to redress Avanru's alleged harm.**

Avanru argues that Section 1983 relief should be extended to its claims, because *Creative Environments* contemplated the availability of state-law remedies, but no such remedies exist in the State of New Hampshire. (Br. 31-34.) Avanru's argument fails, because adequate state-law remedies do exist, and New Hampshire state courts are best

suited to provide relief. *See  Colon Medina & Sucesores, Inc.,* 964 F.2d at 45 (in "the vast majority of instances, local and state agencies and courts are closer to the situation and better equipped to provide relief.").

RSA 677:4 and 677:15 provide appellate procedures for a party aggrieved by the decision of a zoning board of appeals or planning board. To the extent Avanru believed that the conditions of site plan review led to costly design changes, it had an adequate state-law remedy to challenge those conditions. RSA 677:14 and 677:20 authorize the award of costs and fees against a municipality upon a finding that the local board acted in bad faith, with malice, or with gross negligence in rendering a decision. To the extent Avanru believed that Defendants specifically targeted its project, it had an adequate state-law remedy to recoup the expense in overturning unlawful decisions. Further, Avanru had the availability of state law claims sounding in lost profits, tortious interference with contracts, and regulatory takings (amongst others) to redress whatever financial harms it perceived were caused by the local land permitting process. Avanru had sufficient state-law remedies to redress its perceived harms, and the New Hampshire Courts are closer to the local land planning process, and best equipped to assess whether relief was warranted.

## CONCLUSION

There is a strong presumption against extending Section 1983 relief to local planning and zoning disputes. Such relief is only reserved for the most extreme, invidious, or egregious conduct. The voluminous evidentiary record appended to Avanru's Complaint thoroughly establishes that this case is nothing more than a run of the mill dispute between a developer and town planning agency. The District Court was correct to evaluate, then reject, Avanru's conclusory allegations in light of the entire record put before it. The precedent of the First Circuit make clear that Avanru cannot maintain a Section 1983 claim, and the District Court properly dismissed its Complaint.

Respectfully submitted,

**TOWN OF SWANZEY, NH ZONING BOARD**
**TOWN OF SWANZEY, NH PLANNING BOARD**
**ANNE KARASINSKI**
**ADAM MULHEARN**
**BRYAN RUDGERS**
**ROBERT MITCHELL**
**RICHARD LANE**
**JANE JOHNSON**
**STEVE MALONE**
**SYLVESTER KARASINSKI**
**MATTHEW BACHLER**

By Their Attorneys,

**GALLAGHER, CALLAHAN & GARTRELL, P.C.**

Dated: October 16, 2025          */s/ Emily C. Goering*
Emily C. Goering, Esq. (#268497)
Robert J. Dietel, Esq. (#19540)
214 North Main Street
Concord, NH  03301
603-545-3613 / 603-545-3613
goering@gcglaw.com
dietel@gcglaw.com

# CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitations of Fed. R. App. P. 32(a)(7) because, excluding parts of the document exempted by the Fed. R. App. P. 32(f), this document contains 7905 words. This document complies with the typeface and type style requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally-spaced typeface using Microsoft Word, version 2016, in Century Schoolbook, 14-point font.

Dated: October 16, 2025

*/s/ Emily C. Goering*
Emily C. Goering, Esq.

# CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has this date been electronically filed with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system.

James P. Harris – jharris@sheehan.com
Robert H. Miller – rmiller@sheehan.com

Dated: October 16, 2025

*/s/ Emily C. Goering*
Emily C. Goering, Esq.